O

```
                        FILED
              CLERK, U.S. DISTRICT COURT

                    FEB - 5 2014

              CENTRAL DISTRICT OF CALIFORNIA
              BY_____ DEPUTY
```

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JACQUELINE MARIE PORTER,    ) Case No. CV 12-10821-JPR
                            )
            Plaintiff,      )
                            ) MEMORANDUM OPINION AND ORDER
        vs.                 ) AFFIRMING THE COMMISSIONER
                            )
CAROLYN W. COLVIN, Acting   )
Commissioner of Social      )
Security,[1]                )
                            )
_____)
            Defendant.      )
                            )

## I.   PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint

---

[1]    On February 14, 2013, Colvin became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), the Court therefore substitutes Colvin for Michael J. Astrue as the proper Respondent.

1

1   Stipulation, filed October 28, 2013, which the Court has taken
2   under submission without oral argument.  For the reasons
3   discussed below, the Commissioner's decision is affirmed and this
4   action is dismissed.

5   **II.   BACKGROUND**

6         Plaintiff was born on August 10, 1970.  (Administrative
7   Record ("AR") 195.)  She has a bachelor's degree in Christian
8   education.  (AR 35-36, 229.)  Plaintiff previously worked as a
9   cashier at a hotel casino and retail store, hostess in a
10  restaurant, and clerical worker in a dentist's office.  (AR 36-
11  37.)

12        On February 15 and 28, 2008, respectively, Plaintiff filed
13  applications for SSI and DIB.  (AR 70-71, 195-204.)  After
14  Plaintiff's applications were denied, she requested a hearing
15  before an Administrative Law Judge.  (AR 96.)  A hearing was held
16  on January 14, 2011, at which Plaintiff, who was represented by
17  counsel, testified, as did a vocational expert ("VE").  (AR 31-
18  69.)  On February 9, 2011, the ALJ issued a written decision
19  finding Plaintiff not disabled.  (AR 16-25.)  On March 1, 2011,
20  Plaintiff requested review of the ALJ's decision.  (AR 183.)  On
21  January 25, 2012, the Appeals Council denied review.  (AR 7-11.)
22  On March 29, 2012, the Appeals Council set aside its earlier
23  denial, and on November 5, after considering Plaintiff's brief,
24  it again denied review.  (AR 1-5, 193.)  This action followed.

25  **III. STANDARD OF REVIEW**

26        Pursuant to 42 U.S.C. § 405(g), a district court may review
27  the Commissioner's decision to deny benefits.  The ALJ's findings
28  and decision should be upheld if they are free of legal error and

2

1  supported by substantial evidence based on the record as a whole.

2  § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct.

3  1420, 1427, 28 L. Ed. 2d 842 (1971); <u>Parra v. Astrue</u>, 481 F.3d

4  742, 746 (9th Cir. 2007).  Substantial evidence means such

5  evidence as a reasonable person might accept as adequate to

6  support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter</u>

7  <u>v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than

8  a scintilla but less than a preponderance.  <u>Lingenfelter</u>, 504

9  F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880,

10  882 (9th Cir. 2006)).  To determine whether substantial evidence

11  supports a finding, the reviewing court "must review the

12  administrative record as a whole, weighing both the evidence that

13  supports and the evidence that detracts from the Commissioner's

14  conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.

15  1996).  "If the evidence can reasonably support either affirming

16  or reversing," the reviewing court "may not substitute its

17  judgment" for that of the Commissioner.  <u>Id.</u> at 720-21.

18  **IV.   THE EVALUATION OF DISABILITY**

19       People are "disabled" for purposes of receiving Social

20  Security benefits if they are unable to engage in any substantial

21  gainful activity owing to a physical or mental impairment that is

22  expected to result in death or which has lasted, or is expected

23  to last, for a continuous period of at least 12 months.  42

24  U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257

25  (9th Cir. 1992).

26       A.   <u>The Five-Step Evaluation Process</u>

27       The ALJ follows a five-step sequential evaluation process in

28  assessing whether a claimant is disabled.  20 C.F.R.

3

1   §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821,

2   828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first

3   step, the Commissioner must determine whether the claimant is

4   currently engaged in substantial gainful activity; if so, the

5   claimant is not disabled and the claim must be denied.

6   §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not

7   engaged in substantial gainful activity, the second step requires

8   the Commissioner to determine whether the claimant has a "severe"

9   impairment or combination of impairments significantly limiting

10  her ability to do basic work activities; if not, a finding of not

11  disabled is made and the claim must be denied.

12  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a

13  "severe" impairment or combination of impairments, the third step

14  requires the Commissioner to determine whether the impairment or

15  combination of impairments meets or equals an impairment in the

16  Listing of Impairments ("Listing") set forth at 20 C.F.R., Part

17  404, Subpart P, Appendix 1; if so, disability is conclusively

18  presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii),

19  416.920(a)(4)(iii).  If the claimant's impairment or combination

20  of impairments does not meet or equal an impairment in the

21  Listing, the fourth step requires the Commissioner to determine

22  whether the claimant has sufficient residual functional capacity

23  ("RFC")[2] to perform her past work; if so, the claimant is not

24  disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv),

25  416.920(a)(4)(iv).  The claimant has the burden of proving she is

27          [2]    RFC is what a claimant can do despite existing
28  exertional and nonexertional limitations.  §§ 404.1545, 416.945;
    <u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  unable to perform past relevant work.  Drouin, 966 F.2d at 1257.

2  If the claimant meets that burden, a prima facie case of

3  disability is established.  Id.  If that happens or if the

4  claimant has no past relevant work, the Commissioner then bears

5  the burden of establishing that the claimant is not disabled

6  because she can perform other substantial gainful work available

7  in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

8  That determination comprises the fifth and final step in the

9  sequential analysis.  §§ 404.1520, 416.920; Lester, 81 F.3d at

10  828 n.5; Drouin, 966 F.2d at 1257.

11      B.   The ALJ's Application of the Five-Step Process

12          At step one, the ALJ found that Plaintiff had not engaged in

13  substantial gainful activity since December 28, 2007, the alleged

14  onset date.  (AR 18.)  At step two, the ALJ concluded that

15  Plaintiff had the severe impairments of "affective disorders

16  diagnosed as depressive disorder and bipolar disorder, anxiety-

17  related disorders diagnosed as panic disorder and social phobia,

18  and personality disorders diagnosed as avoidant personality

19  disorder, schizoid personality disorder, and dependent

20  personality disorder."  (Id.)  At step three, the ALJ determined

21  that Plaintiff's impairments did not meet or equal any of the

22  impairments in the Listing.  (AR 19-21.)  At step four, the ALJ

23  found that Plaintiff had the RFC to perform "a full range of work

24  at all exertional levels" but was "limited to one-to-two step

25  instruction jobs with occasional contact with the public and co-

26  workers."  (AR 21-23.)  Based on the VE's testimony, the ALJ

27  concluded that Plaintiff could perform two jobs that existed in

28  significant numbers in the national economy: industrial cleaner,

1    DOT 381.687-018, 1991 WL 673258, and hand packager, DOT 920.587-

2    018, 1991 WL 687916.  (AR 23-24.)  Accordingly, the ALJ

3    determined that Plaintiff was not disabled.  (AR 24-25.)

4    **V.    DISCUSSION**

5         Plaintiff alleges that the ALJ erred in (1) determining that

6    she could perform the jobs of industrial cleaner and hand

7    packager and (2) failing to properly assess her credibility.  (J.

8    Stip. at 5.)

9         A.    Any Error in the ALJ's Determination that Plaintiff

10              Could Perform Certain Jobs Was Harmless

11        Plaintiff asserts that "the ALJ's assessed [RFC]" for one-

12   or two-step-instruction jobs "does not allow for the performance

13   of the identified occupations" because they both require level-

14   two reasoning skills under the Dictionary of Occupational Titles

15   ("DOT"), which is allegedly inconsistent with the RFC

16   determination.  (J. Stip. at 6.)  Plaintiff also argues that the

17   VE's testimony, upon which the ALJ relied in finding Plaintiff

18   capable of the two jobs, conflicted with the DOT and that the ALJ

19   failed to elicit a reasonable explanation for that deviation.

20   (Id. at 9-10.)

21             1.    Applicable law

22        At step five of the five-step process, the Commissioner has

23   the burden to demonstrate that the claimant can perform some work

24   that exists in "significant numbers" in the national or regional

25   economy, taking into account the claimant's RFC, age, education,

26   and work experience.  Tackett v. Apfel, 180 F.3d 1094, 1100 (9th

27   Cir. 1999); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c),

28   416.960(c).  The Commissioner may satisfy that burden either

through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2.  Tackett, 180 F.3d at 1100-01; see also Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012).  When a VE provides evidence about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that evidence and the DOT.  See SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000); Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (holding that application of SSR 00-4p is mandatory). An ALJ's failure to do so is procedural error, but the error is harmless if no actual conflict existed or the VE provided sufficient evidence to support the conclusion.  Massachi, 486 F.3d at 1154 n.19.

> 2.   Relevant facts[3]

On April 23, 2008, psychologist Susan Patrick examined Plaintiff at the Social Security Administration's request.  (AR 349-60.)  After performing a mental-status examination and administering several psychological tests, Patrick diagnosed major depressive disorder and provided the following functional assessment:

> [Plaintiff's] test results indicate that her overall intellectual functioning is in the Low Average range and her memory abilities fall in the Average to Low Average range.  [Plaintiff] appears to have been able to sustain employment in the past when she was receiving supportive

---

[3]   Because the parties are familiar with the facts, they are summarized here only to the extent relevant to the contested issues.

counseling services, although she reported that she has been fired from at least three jobs due to poor attitude and not showing up for work. [Plaintiff] appears to have poor affect management, poor motivation and low frustration tolerance.

[Plaintiff's] ability to remember was adequate. Her attention and concentration skills were adequate. [Plaintiff's] ability to interact appropriately with supervisors, co-workers and the public may be fair as she exhibits poor frustration tolerance and poor anger management skills. [Plaintiff] has no impairment in her ability to understand and carry out *simple* one or two-step instructions in a standard work environment. [Plaintiff] has no impairment in her ability to understand and carry out uncomplicated instructions. [Plaintiff] would likely have impairment in her ability to understand and carry out complex instructions in a standard or fast paced work setting.

[Plaintiff's] current mental health deficits are unlikely to prevent [her] from sustaining gainful employment in a work environment where she has simple non-complicated tasks that do not require high levels of responsibility or judgment.

(AR 353 (emphasis in original).)

On May 13, 2008, consulting psychologist Brady Dalton reviewed Plaintiff's medical records and completed psychiatric-review-technique and mental-RFC-assessment forms. (AR 361-78.) On the PRT form, Dalton opined that Plaintiff's major depression

1   and anxiety resulted in no restriction of activities of daily
2   living; mild difficulties in maintaining concentration,
3   persistence, and pace; moderate difficulties in maintaining
4   social functioning; and no episodes of decompensation.  (AR 364,
5   366, 371.)  Dalton noted that Plaintiff's mental conditions
6   "appear[] to respond well to medications" and Plaintiff "has
7   never been hospitalized for psychiatric purposes."  (AR 373.)  He
8   believed that Plaintiff's "current level of functioning,
9   performance on psychological testing and MSS[4] suggest no deficits
10  in [her] ability to understand, remember or perform simple or
11  complex tasks" and that she had an "adequate" ability to sustain
12  attention, concentration, persistence, and pace.  (Id.)  Dalton
13  opined that Plaintiff was capable of substantial gainful activity
14  "in a setting with limited social/public contacts."  (Id.)
15       On the mental-RFC form, Dalton opined that Plaintiff had
16  moderate limitations on her ability to perform activities within
17  a schedule, maintain regular attendance, be punctual, complete a
18  normal workweek without interruption, perform at a consistent
19  pace, interact appropriately with the general public, and get
20  along with coworkers and peers.  (AR 375-76.)  Plaintiff was not
21  significantly limited in her ability to perform any other listed
22  tasks, including carrying out simple or detailed instructions,
23  making simple work-related decisions, and maintaining attention
24  and concentration for extended periods.  (Id.)  Dalton concluded
25  that Plaintiff was "capable of simple and detailed work in a
26
27       [4]   "MSS" presumably refers to Patrick's "medical source
28  statement."  (See AR 354 ("Psychological/Psychiatric Medical
    Source Statement").)

                                  9

1   setting with limite[d] social/public contacts." (AR 377.)

2       At the January 14, 2011 hearing, Plaintiff testified that
3   she suffered from three or four panic attacks a week, had anger
4   problems and would start screaming without knowing why, did not
5   socialize, was "extremely self-conscious," had "racing thoughts,"
6   and could concentrate for only about 20 minutes. (AR 39-41, 45,
7   50, 52-53.) She said she could not maintain a job sitting and
8   putting things together, even without any other people around,
9   because she didn't think she would "be able to follow the
10  instructions." (AR 55-56.)

11      After Plaintiff testified, the ALJ asked the VE whether
12  suitable jobs existed for "a hypothetical individual of
13  [Plaintiff's] age, education, [and] work background, with the
14  following limitations: no exertional limitations, but limited to
15  one- to two-step simple instruction jobs, with occasional contact
16  with public and coworkers." (AR 64.) The VE testified that such
17  a person could perform the jobs of industrial cleaner, DOT
18  381.687-018, and hand packager, DOT 920.587-018. (Id.) The ALJ
19  did not ask the VE whether her testimony was consistent with the
20  DOT. (See AR 63-68.)

21      In her February 9, 2011 decision, the ALJ found that
22  Plaintiff's mental impairments resulted in an RFC limitation to
23  "one-to-two step instruction jobs with occasional contact with
24  the public and co-workers," without the limitation to "simple"
25  such instructions. (AR 21.) In so finding, the ALJ determined
26  that the "most reasonable" assessment of Plaintiff's limitations
27  was that of examining psychologist Patrick, who found that
28  Plaintiff could work in an "environment where she has simple,

1   non-complicated tasks that do not require high levels of
2   responsibility or judgment." (AR 22.) The ALJ gave "reduced
3   weight" to the opinion of consulting psychologist Dalton "because
4   the evidence tends to support moderate limitations in
5   concentration and persistence."[5] (Id.) The ALJ found that
6   Plaintiff could perform the two jobs identified by the VE:
7   industrial cleaner, DOT 920.587-018, and hand packager, DOT
8   920.587-018. (AR 24.) The ALJ noted that the VE's testimony was
9   "consistent with the information contained in the [DOT]." (Id.)
10          3.   Discussion
11      The ALJ's RFC finding that Plaintiff was limited to jobs
12  involving just one- and two-step instructions, without the
13  additional requirement that they be "simple," was not
14  inconsistent with her finding that Plaintiff could perform jobs
15  requiring reasoning level two, as Plaintiff argues. See DOT
16  381.687-018, 1991 WL 673258 (stating that industrial-cleaner job
17  requires level-two reasoning); DOT 920.587-018, 1991 WL 687916
18  (stating that hand-packager job requires level-two reasoning).
19  Appendix C of the DOT defines "reasoning development" on a scale
20  of one to six, with level one, the lowest, requiring the
21  following aptitudes:
22      Apply commonsense understanding to carry out simple one-
23      or two-step instructions.  Deal with standardized
24
25 _____
        [5]   The ALJ gave "little weight" to the opinion of
26  therapist Brian Holmes and a check-off form completed by
    providers at Mojave Mental Health, both of which stated that
27  Plaintiff was unable to work, because the medical record did not
    support them.  (AR 22, 565-66, 575-77.)  Plaintiff does not
28  challenge the ALJ's rejection of that evidence.

                                11

1     situations with occasional or no variables in or from
2     these situations encountered on the job.
3  1991 WL 688702.   Level two, on the other hand, requires that an
4  employee
5        [a]pply commonsense understanding to carry out detailed
6        but uninvolved written or oral instructions.   Deal with
7        problems involving a few concrete variables in or from
8        standardized situations.
9  (Id.)   An RFC limitation to simple one- or two-step instructions
10 would clearly correspond to the "simple one- or two-step
11 instructions" required by level-one reasoning.   See Grigsby v.
12 Astrue, EDCV 08-1413-AJW, 2010 WL 309013, *2-*3 (C.D. Cal. Jan.
13 22, 2010).   The ALJ, however, limited Plaintiff to "one-to-two
14 step instruction jobs," without any additional requirement that
15 they be "simple."   (AR 21.)   The ALJ's RFC limitation therefore
16 did not conflict with her finding that Plaintiff could perform
17 the identified jobs, which required only that she apply
18 "commonsense understanding" to perform the "detailed but
19 uninvolved" instructions.
20      Indeed, the DOT's descriptions of the two identified jobs
21 show that they mainly involved only basic cleaning and packaging
22 tasks.   The industrial-cleaner job involves, for example,
23 transporting materials using a handtruck; arranging boxes and
24 materials in a neat and orderly manner; cleaning lint, dust, oil,
25 and grease from machines and overhead pipes; cleaning floors; and
26 picking up scrap, see 381.687-018, 1991 WL 673258, while the
27 hand-packager job involves cleaning packaging containers, lining
28 and padding crates and cartons, sorting products, wrapping

1    products in protective material, using a conveyor, filling
2    containers from a spout or chute, sealing containers, and
3    recording information such as weight and date packed, see DOT
4    920.587-018, 1991 WL 687916.

5         Plaintiff is correct, however, that the VE's testimony in
6    response to the ALJ's hypothetical conflicted with the DOT and
7    that the ALJ failed to elicit an adequate explanation for that
8    conflict.   The ALJ included in her hypothetical to the VE a
9    limitation to "simple" one- to two-step instruction jobs, and the
10   VE testified that a person with such limitations could perform
11   the two identified jobs.   (AR 64.)   A limitation to "simple" one-
12   to two-step instructions, however, is inconsistent with jobs
13   requiring level-two reasoning.   See, e.g., Groom v. Astrue, EDCV
14   12-1509 JC, 2013 WL 304518, at *4 (C.D. Cal. Jan. 25, 2013)
15   (finding plaintiff limited to "simple" one- and two-step
16   instructions precluded from level-two-reasoning jobs because
17   "[l]evel 2 reasoning jobs involve 'detailed but uninvolved
18   written or oral instructions,' which by definition is more
19   complex than Level 1 reasoning jobs which are limited to 'simple
20   one-or two-step instructions'"); Ruiz v. Colvin, EDCV 12-1628
21   AGR, 2013 WL 3878957, at *3 (C.D. Cal. July 26, 2013) ("A
22   limitation to simple one and two step tasks is inconsistent with
23   Reasoning Level Two.").   Despite the ALJ's statement in her
24   decision that the VE's testimony that Plaintiff could perform
25   those jobs was consistent with the DOT (AR 24), it plainly was
26   not, and the ALJ never asked the VE to clarify or explain the
27   inconsistency.   Thus, the ALJ erred.   See Massachi, 486 F.3d at
28   1153-54.

1       Reversal is not necessary, however, because any error was
2   harmless.  First, the ALJ ultimately found that Plaintiff had the
3   RFC to perform one- to two-step instructions without including a
4   limitation that they be "simple," which as discussed above is not
5   inconsistent with level-two-reasoning jobs.  Second, none of the
6   credited medical evidence shows that Plaintiff was incapable of
7   exercising her "commonsense understanding" to perform the
8   "detailed but uninvolved" instructions required by jobs with
9   level-two reasoning.  Psychologist Dalton, whose opinion the ALJ
10  partially credited (AR 22), including on this ground,[6] found that
11  Plaintiff had "no deficits" in her ability to "understand,
12  remember or perform simple or complex tasks" (AR 371, 373).
13  Psychologist Patrick, whose opinion the ALJ found to be "most
14  reasonable" (AR 22), found that Plaintiff had "adequate" memory,
15  attention, and concentration and "no impairment" in her ability
16  to "understand and carry out simple one or two-step instructions"
17  or "understand and carry out uncomplicated instructions" (AR 353
18  (emphasis omitted)).  Patrick opined that Plaintiff could perform
19  "simple non-complicated tasks that do not require high levels of
20  responsibility or judgment."  (Id.)  Nothing in those assessments
21  suggests that Plaintiff was unable to perform jobs with level-two
22  reasoning.  See Meissl v. Barnhart, 403 F. Supp. 2d 981, 985
23  (C.D. Cal. 2005) (noting that DOT defines level-two reasoning as
24  "requir[ing] the understanding to carry out detailed
25  instructions" but "specifically caveats that the instructions

26  _____

27      [6]   The ALJ rejected Dalton's opinion only as it concerned
28  Plaintiff's limitations involving concentration and persistence.
    (AR 22.)

14

1   would be uninvolved — that is, not a high level of reasoning");
2   see also id. at 984 (noting that level-one reasoning applies "to
3   the most elementary of occupations" requiring "only the slightest
4   bit of rote reasoning").[7]  Plaintiff, of course, has a bachelor's
5   degree (AR 35-36, 229), further undermining any suggestion that
6   she was incapable of performing instructions involving more than
7   "the slightest bit of rote reasoning."

8        Accordingly, even though the ALJ erred in not seeking
9   further clarification from the VE, any error was necessarily
10  harmless because the ALJ's RFC determination was appropriate and
11  the credited evidence showed that Plaintiff could perform level-
12  two reasoning.  See Bordbar v. Astrue, 475 F. App'x 214, 215 (9th
13  Cir. 2012) (finding any error in ALJ's reliance on VE testimony
14  that person limited to "one to two-step simple instruction kinds
15  of jobs" could perform jobs with level-two reasoning harmless
16  because court "ha[d] no doubt, based on the record, that
17  [plaintiff] could perform jobs at Reasoning Level Two"); see also
18  Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's
19  error harmless when "inconsequential to the ultimate
20  nondisability determination" (internal quotation marks omitted));
21  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.
22  2006) (same).  Plaintiff is not entitled to remand on this
23  ground.

24  _____

25       [7]   For example, the Meissl court noted that "the DOT
    describes the following jobs as requiring only a reasoning level
26  of one: Counting cows as they come off a truck (job title Checker
    (motor trans.)); pasting labels on filled whiskey bottles (job
27  title Bottling-Line Attendant (beverage)); and tapping the lid of
    cans with a stick (job title Vacuum Tester, Cans)."  403 F. Supp.
28  2d at 984.

1

2      B.   The ALJ Permissibly Discounted Plaintiff's Credibility

3           Plaintiff argues that the ALJ decision is "void of any

4      sufficient rationale at all as to why the ALJ ignored and

5      disregards [sic] [Plaintiff's] testimony."  (J. Stip. at 23.)

6           1.   Applicable law

7           An ALJ's assessment of symptom severity and claimant

8      credibility is entitled to "great weight."  See Weetman v.

9      Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779

10     F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to

11     believe every allegation of disabling pain, or else disability

12     benefits would be available for the asking, a result plainly

13     contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina, 674 F.3d at 1112

14     (internal quotation marks omitted).  In evaluating a claimant's

15     subjective symptom testimony, the ALJ engages in a two-step

16     analysis.  See Lingenfelter, 504 F.3d at 1035-36.  "First, the

17     ALJ must determine whether the claimant has presented objective

18     medical evidence of an underlying impairment [that] could

19     reasonably be expected to produce the pain or other symptoms

20     alleged."  Id. at 1036 (internal quotation marks omitted).  If

21     such objective medical evidence exists, the ALJ may not reject a

22     claimant's testimony "simply because there is no showing that the

23     impairment can reasonably produce the degree of symptom alleged."

24     Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in

25     original).  When the ALJ finds a claimant's subjective complaints

26     not credible, the ALJ must make specific findings that support

27     the conclusion.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th

28     Cir. 2010).  Absent affirmative evidence of malingering, those

16

1   findings must provide "clear and convincing" reasons for

2   rejecting the claimant's testimony.  <u>Lester</u>, 81 F.3d at 834.  If

3   the ALJ's credibility finding is supported by substantial

4   evidence in the record, the reviewing court "may not engage in

5   second-guessing."  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th

6   Cir. 2002).

7            2.   <u>Discussion</u>

8        At the January 2011 hearing, Plaintiff testified that she

9   could not work because she was depressed and "unable to function

10  socially."  (<u>See</u> AR 37.)  Plaintiff said she was fired from her

11  cashiering job in December 2007 because of her "attitude" and

12  because she had been "afraid to go to work" and as a result was

13  absent two or three days a week.  (AR 37-38.)  Plaintiff further

14  alleged that because of her mental impairments, she had angry

15  outbursts and panic attacks, could concentrate for only about 20

16  minutes, and could not follow instructions.  (AR 39-41, 52-53,

17  55-56.)

18       After considering Plaintiff's subjective complaints, the ALJ

19  largely accommodated them by limiting her to work involving only

20  one- or two-step instructions and occasional contact with the

21  public and coworkers.  (<u>See</u> AR 21 (listing Plaintiff's RFC), 22

22  ("Although [Plaintiff] testified to problems in dealing with

23  people, the [RFC] limits her to only occasional contact with

24  people.").)  For the reasons discussed below, moreover, the ALJ

25  did not err in discounting Plaintiff's subjective complaints to

26  the extent they were inconsistent with that RFC.  (<u>See</u> AR 23

27  (noting that Plaintiff's statements "are not credible to the

28  extent they are inconsistent with" her RFC).)

1    As an initial matter, contrary to Plaintiff's contention

2  that "[t]here is simply no evidence of malingering here" (J.

3  Stip. at 27), at least two of Plaintiff's providers noted that

4  she was in fact malingering (see AR 396 (noting that Plaintiff

5  "continues to malinger and not make any positive choices to

6  better her lifestyle"), 445 (noting that Plaintiff "has made some

7  progress regarding her treatment but continues to have issues

8  with malingering")).   The ALJ was therefore likely relieved of

9  her obligation to provide "clear and convincing" reasons for

10  rejecting Plaintiff's testimony.   See Bagoyan Sulakhyan v.

11  Astrue, 456 F. App'x 679, 682 (9th Cir. 2011) ("When there is

12  affirmative evidence of malingering . . . the ALJ is relieved of

13  the burden of providing specific, clear, and convincing reasons

14  to discount claimant's testimony."); Schow v. Astrue, 272 F.

15  App'x 647, 651 (9th Cir. 2008) ("the weight of our cases hold

16  that the mere existence of 'affirmative evidence suggesting'

17  malingering vitiates the clear and convincing standard of

18  review"); Flores v. Comm'r of Soc. Sec., 237 F. App'x 251, 252-53

19  (9th Cir. 2007) ("an ALJ may reject a claimant's subjective pain

20  testimony if the record contains affirmative evidence of

21  malingering").   Even if the clear and convincing standard

22  applies, however, reversal is not warranted because the ALJ's

23  findings amply met that standard.

24    First, the ALJ summarized Plaintiff's various activities and

25  correctly found that her "testimony did not indicate a complete

26  inability to function in the workplace," as she claimed she had.

27  (AR 22.)   Indeed, Plaintiff's statements regarding her daily

28  activities contradicted her claims that, for example, she was too

18

1  depressed to work, did not socialize, and was unable to "function

2  socially," follow directions, or concentrate.  (AR 37, 41, 52-53,

3  55-56.)  For example, Plaintiff testified that she lived with two

4  other women in a house owned by her father.  (AR 41-42, 61.)  She

5  collected the rent from her roommates and had no problem getting

6  along with them.  (Id.)  Plaintiff made her own meals, did

7  laundry, shopped for groceries, cleaned her room, cleaned the

8  common areas of the house when the owner, her father, was coming

9  over, and went to the movies with friends.  (AR 41-43, 50-51; see

10 also AR 247 (function report stating that Plaintiff prepared her

11 own food, did laundry, cleaned, and shopped).)  Plaintiff got

12 along well with her family members and occasionally drove an hour

13 to her parents' house.  (AR 53-54.)  And although Plaintiff

14 testified that she could watch a game show for only 20 minutes at

15 a time (AR 52-53), in an earlier function report Plaintiff had

16 written that she watched wrestling on television, read, and

17 watched movies daily and had "no problems" doing those activities

18 (AR 249).  Plaintiff also wrote in the function report that she

19 went to the library for an hour three or four times a week,

20 talked on the phone with her parents and sister five or six times

21 a week, attended church once a week, and shopped for groceries

22 for two hours once a week.  (AR 245, 249.)  She was able to pay

23 bills, count change, handle a savings account, and use a

24 checkbook.  (AR 248.)

25      Similarly, Plaintiff reported to psychologist Patrick that

26 her daily activities included watching television, going to the

27 library and checking out books, using the library computer, going

28 to the store, checking the mail, making dinner, and doing

1   puzzles.  (AR 350.)  Her hobbies included reading, going to the

2   movies, and watching wrestling on television, and she attended

3   church most Sundays.  (Id.)  Plaintiff also reported that she

4   could independently care for her personal hygiene, administer her

5   medications, make medical appointments, look up numbers in the

6   phone book, cook simple meals, keep her house clean, shop, use a

7   checkbook, and manage money.  (Id.)  Although Plaintiff testified

8   that her excessive work absences had been because she was

9   "afraid" to go to work (AR 38), she told Patrick that she had

10   been absent because "she would have Thursday and Friday off work

11   and then decide she wanted to have more days off and take

12   Saturday and Sunday off" (AR 351).  The ALJ was therefore

13   entitled to discount Plaintiff's credibility because her claims

14   of disability were inconsistent and conflicted with her reported

15   activities.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d

16   1219, 1227 (9th Cir. 2009) (ALJ properly discounted claimant's

17   testimony because "she leads an active lifestyle, including

18   cleaning, cooking, walking her dogs, and driving to

19   appointments"); Smolen, 80 F.3d at 1284 (in assessing

20   credibility, ALJ may use "ordinary techniques of credibility

21   evaluation," such as "prior inconsistent statements concerning

22   the symptoms, and other testimony by the claimant that appears

23   less than candid"); Thomas, 278 F.3d at 958-59 (in assessing

24   credibility, ALJ may consider inconsistencies either in

25   claimant's testimony or between testimony and conduct); cf.

26   Molina, 674 F.3d at 1113 ("Even where [claimant's] activities

27   suggest some difficulty functioning, they may be grounds for

28   discrediting the claimant's testimony to the extent that they

1   contradict claims of a totally debilitating impairment.").

2       The ALJ also permissibly discounted Plaintiff's credibility

3   because the "longitudinal evidence d[id] not support a finding of

4   disability." (AR 21.)  Indeed, examining psychologist Patrick

5   found that Plaintiff's ability to interact with people was

6   "fair"; her memory, attention, and concentration were "adequate";

7   and her ability to carry out uncomplicated instructions was

8   unimpaired. (AR 353.)  Psychologist Dalton similarly found that

9   Plaintiff was moderately limited in social functioning but had an

10  adequate ability to sustain attention, concentration,

11  persistence, and pace and no limitation on her ability to

12  understand, remember, or perform simple or complex tasks.  (AR

13  373.)  Both psychologists believed that Plaintiff could work,

14  albeit with some limitations.  (AR 353, 373.)  Indeed,

15  Plaintiff's own providers often encouraged her to seek

16  employment.  (See, e.g., AR 401 (advising Plaintiff to attend

17  vocational rehabilitation group), 403 (noting that Plaintiff

18  "continues to avoid p[u]rsuing any employment opportunities and

19  has not presented with any significant mental impairments"), 404

20  (advising Plaintiff that "sometimes the best thing that she could

21  do is to locate a job"), 430 (encouraging Plaintiff to "cont. to

22  seek further info/education on poss. career choices"), 446

23  (listing "locate employment opportunities" and "locate job" as

24  "goals" of treatment), 593 (encouraging Plaintiff to "continue

25  seeking employment as she is only counting on SSDI and this may

26  not be a good option for her").)  The ALJ therefore reasonably

27  concluded that Plaintiff's claim of total disability was not

28  supported by the objective medical evidence.

1    Plaintiff does not argue that the medical evidence supports

2  her subjective symptom testimony but instead incorrectly contends

3  that the rejection of a claimant's testimony based on a lack of

4  objective evidence is "always legally insufficient." (J. Stip.

5  at 24-25.)  An ALJ may not disregard a claimant's subjective-

6  symptom testimony "*solely* because it is not substantiated

7  affirmatively by objective medical evidence." Robbins, 466 F.3d

8  at 883 (emphasis added); see also Bunnell v. Sullivan, 947 F.2d

9  341, 346-47 (9th Cir. 1991).  The ALJ may, however, use the

10  medical evidence in the record as one factor in the evaluation.

11  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161

12  (9th Cir. 2008) ("Contradiction with the medical record is a

13  sufficient basis for rejecting the claimant's subjective

14  testimony."); Lingenfelter, 504 F.3d at 1040 (in determining

15  credibility, ALJ may consider "whether the alleged symptoms are

16  consistent with the medical evidence"); Burch v. Barnhart, 400

17  F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence

18  cannot form the sole basis for discounting pain testimony, it is

19  a factor that the ALJ can consider in his credibility

20  analysis."); Kennelly v. Astrue, 313 F. App'x 977, 979 (9th Cir.

21  2009) (same).  Here, as explained above, the ALJ's credibility

22  determination was supported by at least one other clear and

23  convincing reason, the inconsistencies between her testimony and

24  the extent of her daily activities; thus, there was no error.

25    This Court may not "second guess" the ALJ's credibility

26  finding simply because the evidence may have been susceptible of

27  other interpretations more favorable to Plaintiff.  See

28  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  The

1  ALJ reasonably and properly discredited Plaintiff's testimony
2  regarding the severity of her symptoms and gave clear and
3  convincing reasons for her adverse credibility finding, even
4  though a lesser standard was likely applicable because of the
5  evidence of Plaintiff's malingering.  Reversal is therefore not
6  warranted on this basis.

7  **VI.  CONCLUSION**

8      Consistent with the foregoing, and pursuant to sentence four
9  of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered
10 AFFIRMING the decision of the Commissioner and dismissing this
11 action with prejudice.  IT IS FURTHER ORDERED that the Clerk
12 serve copies of this Order and the Judgment on counsel for both
13 parties.

17 DATED: February 5, 2014

HON.  JEAN P. ROSENBLUTH
U.S. Magistrate Judge

26      [8]   This sentence provides: "The [district] court shall
27 have power to enter, upon the pleadings and transcript of the
   record, a judgment affirming, modifying, or reversing the
28 decision of the Commissioner of Social Security, with or without
   remanding the cause for a rehearing."

23